**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

LEWIS & STANZIONE et al.,

                               Plaintiffs,                    1:13-cv-863
                                                                                 (GLS/RFT)

                    v.

ST. PAUL FIRE & MARINE
INSURANCE COMPANY,

                               Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| *Lewis & Stanzione* | |
| Lewis, Stanzione Law Firm | RALPH C. LEWIS, JR., ESQ. |
| 287 Main Street | |
| Catskill, NY 12414 | |
| | |
| *Lewis & Stanzione*; *Joseph Stanzione* | |
| Office of Raymond A. Kelly | RAYMOND A. KELLY, ESQ. |
| 112 State Street | |
| Suite 1005 | |
| Albany, NY 12207 | |
| | |
| **FOR THE DEFENDANT:** | |
| Aronberg, Goldgehn Law Firm | AMBER O. LAFEVERS, ESQ. |
| 330 North Wabash, Suite 1700 | CHRISTOPHER J. BANNON, |
| Chicago, IL 60611 | ESQ. |
| | |
| Goldberg, Segalla Law Firm | MATTHEW S. LERNER, ESQ. |
| 8 Southwoods Boulevard | |
| Suite 300 | |
| Albany, NY 12211-2526 | |

                                     **MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Plaintiffs Lewis & Stanzione (hereinafter, "the Firm") and Joseph Stanzione, the insured, commenced this diversity action against defendant St. Paul Fire & Marine Insurance Company, the insurer, seeking a declaratory judgment that St. Paul must defend Stanzione in an underlying lawsuit pursuant to a professional liability insurance policy. (Am. Compl., Dkt. No. 35.)[1] Pending are plaintiffs' motion for summary judgment, (Dkt. No. 56), St. Paul's motion for summary judgment, (Dkt. No. 57), and St. Paul's motion to strike, (Dkt. No. 59). For the reasons that follow, St. Paul's motion for summary judgment is granted, its motion to strike is denied as moot, and plaintiffs' motion for summary judgment is denied.

## II. Background

### A. Facts[2]

St. Paul issued a Lawyer's Professional Liability Policy, under policy number 561JB9299 (the "Policy"), to the Firm, which was effective from June 3, 2010 to June 3, 2011, and generally provides defense and

---

[1] Although plaintiffs' amended complaint asserts five causes of action, (Am. Compl. ¶¶ 55-86), the parties have since stipulated to dismissal of plaintiffs' second, third, fourth, and fifth causes of action, (Dkt. No. 54), leaving only plaintiffs' claim for a declaratory judgment remaining.

[2] Unless otherwise noted, the facts are not in dispute.

2

indemnity coverage.[3] (Dkt. No. 57, Attach. 2 at 9-27; Def.'s Statement of Material Facts (SMF) ¶ 1, Dkt. No. 57, Attach. 5.) More specifically, the Policy provides that St. Paul will indemnify an insured for "'damages'[4] and 'claims expenses,'" as long as the "'damages' . . . arise out of an error, omission, negligent act or 'personal injury', in the rendering of or failure to render 'legal services'[5] for others." (Def.'s SMF ¶ 2; Dkt. No. 57, Attach. 2 at 13.) With respect to St. Paul's defense obligations, the Policy provides that St. Paul "will have the right and duty to defend any 'claim'[6] or 'suit' against an insured seeking 'damages' to which this insurance applies, even if any of the allegations of the 'claim' or 'suit' are groundless, false or

---

[3] The insured under the policy includes the Firm, along with "[a]ny person who was, is now or hereafter becomes a partner . . . of the [Firm]." (Dkt. No. 57, Attach. 2 at 10, 14; Def.'s SMF ¶ 5.)

[4] "Damages" are defined as "compensatory damages which an insured becomes legally obligated to pay as a result of any judgment, award or settlement," but "does not include punitive or exemplary damages, fines, sanctions or penalties, equitable relief or the return or reimbursement of fees for 'professional legal services' whether or not rendered." (Dkt. No. 57, Attach. 2 at 16.)

[5] "Professional Legal Services" are defined as "services performed or advice given by you or on your behalf for others in the conduct of your practice as a lawyer." (Dkt. No. 57, Attach. 2 at 17.)

[6] "Claim" is defined as "a demand received by an insured for money alleging an error, omission or negligent act in the rendering of or failure to render 'professional legal services' for others by you or on your behalf." (Dkt. No. 57, Attach. 2 at 16.)

3

fraudulent." (Def.'s SMF ¶ 2; Dkt. No. 57, Attach. 2 at 13.)  Additionally, the Policy includes certain exclusions, which outline what is *not* covered under the agreement.  (Dkt. No. 57, Attach. 2 at 15-16.)  As relevant here, the Policy states that "[t]his insurance does not apply to 'claims' . . . [a]rising out of any dishonest, fraudulent, criminal or malicious act, error, omission or 'personal injury' committed by, at the direction of, or with the knowledge of an insured," (hereinafter, "the Fraud Exclusion").  (*Id.* at 15.)

Stanzione is a partner with the Firm, and, therefore, an insured under the Policy.  (Def.'s SMF ¶ 6; Dkt. No. 57, Attach. 2 at 10, 14.)  On or about March 17, 2011, Stanzione was sued in New York State court (hereinafter, "the Underlying Action" or "the Underlying Complaint"). (Def.'s SMF ¶¶ 7-10; Dkt. No. 57, Attach. 3.)  The Underlying Action was brought by Melvin D. Hiller & Jeffrey Hiller LLC and Freehold House, Inc. (hereinafter, "the Underlying Plaintiffs"), and alleges only one claim against Stanzione: fraud.  (Dkt. No. 57, Attach. 3 at 2-3, 10-11.)  While the facts of the Underlying Action are complex, the court's discussion of them is not.  Generally, the Underlying Plaintiffs allege that Stanzione, who represented the sellers of the Freehold Country Inn (hereinafter, "the Inn"), along with the other defendants, orchestrated and participated in a

scheme that fraudulently induced Melvin D. Hiller & Jeffrey Hiller LLC to extend a loan in the amount of $1.25 million to Zofia Goshal, the purchaser of the Inn. (Pls.' SMF ¶ 17, Dkt. No. 56, Attach. 2; Dkt. No. 57, Attach. 3 at 3-5.) The loan was secured by a mortgage on the Inn and Goshal's personal guarantee of repayment. (Dkt. No. 57, Attach. 3 at 4-5.) Soon after the closing, however, Goshal defaulted on her mortgage payments, which forced Melvin D. Hiller & Jeffrey Hiller LLC to foreclose on the loan, costing it "damages in excess of $750,000.00." (*Id.* at 4-6.) The Underlying Plaintiffs, thus, seek compensatory and punitive damages in the amount of several million dollars. (*Id.* at 15-16.)

Soon after Stanzione was served with the amended complaint, he notified St. Paul and requested that it defend him in the Underlying Action. (Pls.' SMF ¶¶ 7, 14; Def.'s SMF ¶ 13.) Thereafter, St. Paul sent a letter to Stanzione denying defense and indemnity coverage for the Underlying Action. (Def.'s SMF ¶ 14; Dkt. No. 56, Attach. 5 at 28-32.) In its letter, St. Paul informed Stanzione that coverage was denied because "all of the wrongful acts allegedly committed by you are claimed to have occurred as part of a fraudulent scheme intended to secure the loan at issue," and "the Policy does not apply to claims arising out of a 'dishonest, fraudulent,

5

criminal or malicious act, error or omission.'" (Dkt. No. 56, Attach. 5 at 30.)

B.  **Procedural History**

The Firm commenced this action in New York State court, seeking, among other things, a declaratory judgment ordering St. Paul to defend Stanzione in the Underlying Action, but failed to name Stanzione as a plaintiff. (Dkt. No. 1, Attach. 1 at 2-4.) Thereafter, St. Paul removed the action to federal court, (Dkt. No. 1), filed an answer with counterclaims, (Dkt. No. 6), and interposed a third-party complaint against Stanzione, (Dkt. No. 17). After a few rounds of tortured motion practice, (Dkt. Nos. 24, 27), the procedural posture of this case aligned—and all third-party practice was eradicated—upon the Firm and Stanzione's filing of an amended complaint, (Dkt. No. 35). St. Paul then filed an answer to the amended complaint and interposed a counterclaim against Stanzione, seeking only a declaration that St. Paul is not obligated to defend or indemnify him in the Underlying Action. (Dkt. No. 45.) The parties then filed their respective summary judgment motions, (Dkt. Nos. 56, 57), and St. Paul filed a cross motion to strike, (Dkt. No. 59), all of which are now ripe for review.

## III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion[7]

St. Paul contends that it has no duty to defend or indemnify Stanzione in the Underlying Action because the Underlying Complaint fits squarely and entirely within the Fraud Exclusion. (Dkt. No. 57, Attach. 6 at 7-13.) In response, plaintiffs primarily contend that a fair reading of the Underlying Complaint suggests a reasonable possibility of coverage. (Dkt. No. 58 at 5-11.) Plaintiffs further contend that a determination regarding St. Paul's obligation to indemnify is premature at this juncture. (Dkt. No. 56, Attach. 3 at 18-20.) The court agrees with St. Paul in all respects.

**A.     St. Paul's Duty to Defend**

Under New York law, an insurer has an "exceedingly broad" duty to defend the insured, *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137

---

[7] The parties, and the court, agree that New York law applies to this diversity action.

(2006) (internal quotation marks and citation omitted), and the duty to defend is even broader than the duty to indemnify, *see Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984). An insurer's obligation to provide a defense is triggered "whenever the allegations of the complaint suggest . . . a reasonable possibility of coverage." *Cook*, 7 N.Y.3d at 137 (internal quotation marks and citation omitted).

This duty to defend on the insurer's part remains, unless the insurer can "establish, as a matter of law, that there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify [the insured] under any provision contained in the policy." *Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 64 N.Y.2d 846, 848 (1985). For this reason, an insurer who seeks to be relieved of the duty to defend based on a policy exclusion

> bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision.

*Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997). Further, "[i]f any of the claims against the insured

arguably arise from covered events, the insurer is required to defend the entire action." *Id.*

Moreover, a court reviewing an insurance policy must remain mindful that it is a "contract[ ] to which the ordinary rules of contractual interpretation apply." *Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F. Supp. 2d 381, 386 (S.D.N.Y. 2008). New York insurance contracts are construed in light of "common speech." *Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398 (1983). Insurance contracts also must be interpreted "according to the reasonable expectation and purpose of the ordinary businessman when making an ordinary business contract." *Gen. Motors Acceptance Corp. v. Nationwide Ins. Co.*, 4 N.Y.3d 451, 457 (2005) (internal quotation marks and citation omitted). Where there are ambiguous terms in a policy, these "must be construed in favor of the insured and against the insurer." *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007).

Here, the Underlying Complaint alleges exclusively dishonest and fraudulent conduct on the part of Stanzione, and, in fact, asserts only a single claim of fraud against him. (*See generally* Dkt. No. 57, Attach. 3.) Specifically, the Underlying Complaint alleges, among other things, that

Stanzione: (1) was "aware of the [mis-]representations that had been made to the Hillers" regarding Goshal's ability to repay the loan; (2) "aid[ed] and abett[ed] the fraud"; (3) had "knowledge" that Goshal was, in fact, "indigent" and incapable of ever repaying the loan, and that other defendants "had to lend her and/or advance on her behalf[] some thousands of dollars to enable the closing at which they participated"; and (4) "knowingly participated in the fraud . . . in order to gain the proceeds of the mortgage granted to . . . Goshal [and] to secure funds for [himself]." (*Id.* at 4, 7-10.) Because the Fraud Exclusion unambiguously[8] states that the Policy "does not apply to 'claims' . . . [a]rising out of any dishonest, fraudulent, criminal or malicious act, error, omission or 'personal injury' committed by, at the direction of, or with the knowledge of an insured,"

---

[8] Citing affidavits from Stanzione and his partner, Ralph Lewis, (Dkt. No. 56, Attach. 8 at 2-8, 10-17), plaintiffs contend that the Fraud Exclusion is ambiguous because "the common understanding among New York practitioners [is] that a criminal act/fraud exclusion only applies to independent wrongful criminal acts not occurring during the traditional rendition of professional legal services." (Dkt. No. 56, Attach. 3 at 15-17.) Putting aside the threshold question of whether these affidavits are admissible, (*see generally* Dkt. No. 59 at 4-13), Lewis and Stanzione's subjective beliefs and expectations are irrelevant. "When interpreting the meaning of a contract, it is the objective intent of the parties that controls. The secret or subjective intent of the parties is irrelevant." *Galanis v. Harmonie Club of City of N.Y.*, No. 1:13-cv-4344, 2014 WL 4928962, at *8 (S.D.N.Y. Oct. 2, 2014) (quoting *Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997)).

(Dkt. No. 57, Attach. 2 at 15), it clearly applies to, and precludes coverage for, the Underlying Action. *See Cent. Mut. Ins. Co. v. Willig*, 29 F. Supp. 3d 112, 120 (N.D.N.Y. 2014) (holding that insured had no duty to defend or indemnify where "the entirety of the Underlying Complaint fit[] within the [wrongful act] Exclusion"); *Silverman Neu, LLP v. Admiral Ins. Co.*, 933 F. Supp. 2d 463, 475-79 (E.D.N.Y. 2013) (holding that a "Wrongful Act" exclusion in an insurance policy was "stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case" (internal quotation marks and citation omitted)); *Chicago Ins. Co. v. Borsody*, 165 F. Supp. 2d 592, 598 (S.D.N.Y. 2001) (holding that an insurer owed no duty to defend or indemnify the insured because the allegations against the insured arose out of fraudulent, dishonest, or criminal conduct, which precluded coverage under a similar fraud exclusion).

Plaintiffs contend, however, that the Underlying Complaint could reasonably be read to suggest that some of the allegations against Stanzione arguably arise from covered events, namely, the allegation that Stanzione was providing legal services to the sellers of the Inn. (Dkt. No. 56, Attach. 3 at 8-13; Dkt. No. 58 at 6.) In essence, plaintiffs argue that,

11

since the Underlying Complaint alleges that Stanzione was rendering legal services, and the Policy provides that St. Paul will indemnify an insured for "'damages' [that] arise out of an error, omission, negligent act or 'personal injury', *in the rendering of or failure to render 'legal services'* for others," (Dkt. No. 57, Attach. 2 at 13 (emphasis added)), the court need not read any further.[9] (Dkt. No. 56, Attach. 3 at 8-13; Dkt. No. 58 at 6.) This

---

[9] In support of this argument, plaintiffs rely on *American Guaranty and Liability Insurance Co. v. Moskowitz*, 58 A.D.3d 426 (1st Dep't 2009), in which the Appellate Division affirmed the New York State Supreme Court's holding that a professional liability insurer was required to defend its insured, an attorney, against claims of fraud and racketeering activity because the claims in the underlying lawsuit were predicated on the lawyer's acts or omissions in rendering legal services. (Dkt. No. 56, Attach. 3 at 11-12.) *Moskowitz*, however, is distinguishable, as the court there was not construing the scope of an exclusion similar to the Fraud Exclusion here, but, instead, was interpreting a provision that excluded coverage "for claims that are based upon . . . the [i]nsured's capacity or status as an officer, director, partner, manager or employee of a business enterprise." *Am. Guar. & Liab. Ins. Co. v. Moskowitz*, 19 Misc. 3d 548, 550-51 (N.Y. Sup. Ct. 2008). Thus, *Moskowitz* has no bearing on the facts here. In fact, the court agrees with St. Paul that *Chicago Ins. Co. v. Borsody*, 165 F. Supp. 2d 592 (S.D.N.Y. 2001), is more on point. (Dkt. No. 64 at 4-5.) In *Borsody*, the court rejected a similar "rendering legal services" argument, and noted that "[t]he fact that [the insured]'s alleged conduct happened to have occurred in the performance of legal services does not change the overall gravamen or tenor of the complaint, or otherwise elevate the complaint to a covered dispute." 165 F. Supp. 2d at 598 (citations omitted). The court further noted that, as is the case here, "[t]he charges against [the insured] in the [underlying] complaint 'aris[e] out of' alleged fraudulent, dishonest or criminal misconduct, and as such are barred from coverage." *Id.*

proposition, however, ignores well-established New York law governing contract interpretation. "In construing a contract, a court should read the contract as a whole, . . . and avoid any interpretation that would render a contractual provision without force and effect." *Luitpold Pharms., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (citing *Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352, 358 (2003); *Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*, 63 N.Y.2d 396, 403 (1984)); *see Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 697 (1980) ("Just as [an insuring agreement] clause affirmatively indicates the coverage which is included, so does the 'exclusion' clause tell us expressly what is not. In policies so drawn, . . . it is not either alone, but the combination of both, which defines the scope of the protection afforded."). While there is no dispute that Stanzione was rendering legal services when he represented the sellers of the Inn, that simply does not end the inquiry. If the court were to read the Policy to impose coverage obligations on St. Paul solely because the Underlying Complaint alleges that Stanzione rendered legal services, it would vitiate the Fraud Exclusion. The court declines to do so.

Further, although plaintiffs argue otherwise, (Dkt. No. 56, Attach. 3

at 12-13; Dkt. No. 58 at 10-11), this holding is not in conflict with *Automobile Insurance Co. of Hartford v. Cook*, 7 N.Y.3d 131 (2006). In *Cook*, the New York Court of Appeals held that the insurer had a duty to defend the insured in an underlying wrongful death action where the insured was sued for negligence, but facts outside of the complaint indicated that the insured had acted intentionally. 7 N.Y.3d at 135-37. The insurer was obligated to defend the insured, despite a "wrongful act exclusion," which excluded coverage for intentional acts, because the insurer "failed to demonstrate that the allegations of the complaint [were] subject to no other interpretation than that" the insured acted intentionally. *Id.* at 138. Here, however, although the court does not pass judgment on the merits of the claims asserted in the Underlying Action, the only interpretation of those claims is that Stanzione acted dishonestly or fraudulently, or, at least, with knowledge of dishonest and fraudulent behavior. Certainly, as plaintiffs argue, (Dkt. No. 56, Attach. 3 at 18-20; Dkt. No. 58 at 7-9), Stanzione could be found not liable in the Underlying Action, and the facts asserted against him could be "groundless, false, fraudulent or baseless,"[10] (Dkt. No. 58 at 7), "but that uncertain outcome is

---

[10] Plaintiffs rely on the Policy language that St. Paul will provide defense coverage "even if any of the allegations . . . are groundless, false

14

immaterial to the issue raised here," *Cook*, 7 N.Y.3d at 138, which is whether "the allegations of the [Underlying C]omplaint cast the pleadings wholly within th[e Fraud E]xclusion,*" Frontier Insulation Contractors*, 91 N.Y.2d at 175. As the court has already found, the Underlying Complaint fits entirely within the Fraud Exclusion.

Finally, plaintiffs argue that summary judgment in favor of St. Paul is improper because an internal email sent from claims counsel, Alicia Morejon, regarding the Firm's claim requesting coverage, states that, "Lewis Stanzione is the insured and . . . I get the sence (sic) I can't outright deny but the allegation against the insured is for fraud only." (Dkt. No. 56, Attach. 8 at 19; Dkt. No. 58 at 6-7.) Plaintiffs contend that "[t]his doubt expressed by Morejon falls well within the . . . decree that '[A]ny doubt as to whether the allegations state a claim within the coverage of

---

or fraudulent." (Dkt. No. 56, Attach. 3 at 8-9; Dkt. No. 57, Attach. 2 at 13; Dkt. No. 58 at 7-9.) But, in so relying, plaintiffs ignore the full language of the defense provision, which is that St. Paul "will have the right and duty to defend any 'claim' or 'suit' against an insured seeking 'damages' *to which this insurance applies*, even if any of the allegations of the 'claim' or 'suit' are groundless, false or fraudulent." (Dkt. No. 57, Attach. 2 at 13 (emphasis added).) As the Fraud Exclusion makes clear, the Policy does not apply to claims that "[a]ris[e] out of any dishonest, fraudulent, criminal or malicious act, error, omission or 'personal injury' committed by, at the direction of, or with the knowledge of an insured." (*Id.* at 15.) Accordingly, it does not matter if the claims in the Underlying Complaint are groundless, false, or fraudulent, as the Policy does not apply to them.

the policy must be resolved in favor of the insured and against the carrier.'" (Dkt. No. 58 at 6-7 (quoting *Brook Shopping Ctr., Inc. v. Liberty Mut. Ins. Co.*, 80 A.D.2d 292, 294 (1st Dep't 1981)).) Plaintiffs' argument is unavailing. The question is whether, in the court's view, there are any doubts as to whether the allegations within the four corners of the Underlying Complaint suggest a possibility of coverage. What Morejon may or may not have initially questioned is irrelevant. Ultimately, Morejon's email does not alter the court's reading of the Underlying Complaint, or persuade the court that there are any claims or allegations asserted against Stanzione that pull any portion of the Underlying Complaint outside of the Fraud Exclusion's scope, such that any coverage would be possible.

**B.      St. Paul's Duty to Indemnify**

St. Paul contends that, because it has no duty to defend Stanzione in the Underlying Action, it, therefore, also has no duty to indemnify him. (Dkt. No. 60 at 15-17.) Plaintiffs, however, argue that a determination on indemnification is premature. (Dkt. No. 56, Attach. 3 at 18-20.) The court again agrees with St. Paul.

As noted above, the duty to defend is broader than the duty to

indemnify. See Seaboard Sur., 64 N.Y.2d at 310. It stands to reason, then, if there is no duty to defend, there can be no duty to indemnify. See EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co., 905 F.2d 8, 11 (2d Cir. 1990) (noting that, because "the duty to defend is broader than the duty to indemnify[,] it is unnecessary to engage in a separate analysis of [an insurer]'s independent claim that it has no duty to indemnify"); Transamerica Ins. Grp. v. Rubens, No. 97 Civ. 8911, 1999 WL 673338, at *7 (S.D.N.Y. Aug. 27, 1999) ("[The insurer] has no duty to defend, and therefore no duty to indemnify."); State of N.Y. v. Blank, 745 F. Supp. 841, 844 (N.D.N.Y. 1990) ("It is also well settled that because the duty to defend is broader than the duty to indemnify, a finding by a court that there is no duty to defend automatically means that there is no duty to indemnify."). Thus, because St. Paul has no duty to defend Stanzione in the Underlying Action, it similarly has no duty to indemnify him for any damages that may be awarded against him in the Underlying Action.

Accordingly, having granted St. Paul's motion for summary judgment, (Dkt. No. 57), plaintiffs' motion for summary judgment, (Dkt. No. 56), which seeks the exact opposite relief, is necessarily denied,[11] and St.

---

[11] Of course, denial of plaintiffs' summary judgment motion necessarily includes a denial of their claim for reimbursement of the

17

Paul's motion to strike, (Dkt. No. 59), is denied as moot.

## V. Conclusion

**ACCORDINGLY**, it is hereby

**ORDERED** that St. Paul's motion for summary judgment (Dkt. No. 57) is **GRANTED**, and St. Paul does not have, nor ever had, a duty to defend or indemnify Stanzione in connection with the Underlying Action; and it is further

**ORDERED** that plaintiffs' motion for summary judgment (Dkt. No. 56) is **DENIED**; and it is further

**ORDERED** that St. Paul's motion to strike (Dkt. No. 59) is **DENIED AS MOOT**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED**

June 17, 2015
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court

---

amounts incurred "defending this action commenced by St. Paul." (Dkt. No. 56, Attach. 3 at 21-22.) The court notes, however, that this request should also be denied because St. Paul did not commence this action; plaintiffs did.

18